Citation Nr: 1641945 
Decision Date: 10/31/16 Archive Date: 11/08/16

DOCKET NO. 05-25 118 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Pittsburgh, Pennsylvania


THE ISSUES

1. Entitlement to a higher rating for lumbar spine intervertebral disc syndrome, currently rated as 10 percent disabling from August 2, 2003 to February 3, 2014 and as 20 percent disabling from the latter date.

2. Entitlement to a higher rating for right lower extremity radiculopathy, currently unrated prior to February 3, 2014 and rated as 10 percent disabling from that date.
 
3. Entitlement to a higher rating for left lower extremity radiculopathy, currently unrated prior to February 3, 2014 and rated as 10 percent disabling from that date.

4. Entitlement to a TDIU due to lumbar spine intervertebral disc syndrome with right and left lower extremity radiculopathy.


REPRESENTATION

Appellant represented by: Disabled American Veterans

ATTORNEY FOR THE BOARD

C. Lawson, Counsel


INTRODUCTION

The Veteran had active military service from July 1990 to August 2003. 

This matter is before the Board of Veterans' Appeals (Board) on appeal from an August 2004 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Pittsburgh, Pennsylvania. In that decision, service connection was established for the low back disability, and a 10 percent rating was assigned, effective from August 2, 2003. In November 2015, the rating for low back disability was increased to 20 percent, effective from February 3, 2014, and 10 percent ratings were assigned for right and left lower extremity radiculopathy, each from February 3, 2014. The lower extremity radiculopathies are manifestations of the Veteran's service-connected back disability. When the Veteran disagreed with the amount of compensation awarded for back, he did not limit his appeal to one manifestation but rather was seeking the highest rating or ratings available for disability due to his service-connected back disability. See AB v Brown, 6 Vet. App. 35 (1993). Moreover, regulation provides that VA is to evaluate any neurologic abnormalities associated with a spine disability under an appropriate diagnostic code. 38 CFR § 4 71a, Note (1) (2015). Thus, when the Veteran appealed the rating assigned for his back disability, his appeal encompassed ratings for all manifestations of the condition. The award of the ratings for lower extremity radiculopathy in the November 2015 decision could not limit the Board's jurisdiction to less than it had acquired via the notice of disagreement filed in connection with rating decision on appeal. Thus, the issues before the Board are as shown on the title page. 

In November 2007, the Board remanded the case primarily for readjudication of the Veteran's claim with consideration under the spine rating criteria effective prior to September 26, 2003, as the Veteran had not been provided with the old rating criteria, nor had the RO considered his claim under the old regulations. 

In June 2011, the Board again remanded, noting that following its November 2007 remand, the instructions to readjudicate the claim under the old regulations had not been followed. In August 2016, after the case was returned to the Board, the representative waived initial RO consideration of additional relevant evidence received on appeal. 

A July 2016 VA examination report raises the matter of entitlement to a total rating for compensation based upon individual unemployability (TDIU) due to multiple service-connected disabilities, some of which are not currently at issue. Unlike in an appeal per Rice v. Shinseki, 22 Vet. App. 447 (2009), where a claim of TDIU rests solely on the disability for which an increased rating is being sought, the Board does not have jurisdiction of this matter. Instead, it is referred to the RO for appropriate action. The Board does have jurisdiction over the matter of entitlement to a TDIU due to the Veteran's service-connected lumbar spine intervertebral disc syndrome with right and left lower extremity radiculopathy, pursuant to Rice, and is rendering a decision on that matter below. 

In January 2016, the RO denied increased ratings for left and right knee disabilities, and proposed to reduce the rating for asthma. In March 2016, the Veteran's representative wrote indicating that it disagreed with a November 2015 decision denying an earlier effective date for asthma, an increased rating and earlier effective date for a low back disability rating, service connection for posttraumatic stress disorder (PTSD), recoupment of disability severance pay, and payment of attorneys fees. However, the RO had not denied service connection for PTSD within a year prior to that letter, and so that correspondence was not a timely notice of disagreement to an RO decision and that decision is not on appeal. The RO advised the Veteran in February 2016 that records did not show that the issue of service connection for PTSD was on appeal. Instead, the RO had notified the Veteran in June 2014 concerning a claim for service connection for PTSD, and he did not submit a notice of disagreement within 1 year of the decision notification date. Also, in February 2016, the RO returned to the Veteran all attorneys fees which it previously withheld from him in December 2015 (in the amount of $1997.76), and so the matter of payment of attorneys fees is not on appeal. 

The RO had made a recoupment of disability severance pay from the Veteran in February 2016, and notified him of that action and of his appeal rights at the time. Subsequent correspondence from the representative (in March 2016) was accepted as a notice of disagreement by the RO, and in April 2016, the RO advised the Veteran that it was going to try to resolve his disagreement through the post-decision review process, for which he had elected to have a decision review officer assigned to his case. The RO indicated that it would issue the Veteran a statement of the case if that review did not resolve his disagreement. As the RO is taking action on this issue which is necessary before any statement of the case which may be necessary is issued, remand for a statement of the case, per Manlincon v. West, 12 Vet. App. 238 (1999), is not warranted, as it could affect the pre-selected RO adjudication process. 

The issue of increased compensation for low back disability, which covers the concerns encompassed by the representative in March 2016 (the effective date for a staged increase in compensation for disabilities at issue), is already on appeal, as part and parcel of the Veteran's appeal for a higher rating for his service-connected low back disability, and the Board is rendering a decision on it at this time. 

In April 2016, the RO reduced the rating for asthma from 100 percent to 30 percent and terminated special monthly compensation from the July 1, 2016 date the asthma rating was reduced. The Veteran had previously in March 2016 attempted to disagree with the January 2016 proposed reduction for asthma. However, a proposed rating decision such as the January 2016 proposed rating decision is not appealable. Moreover, the Veteran has not filed a notice of disagreement with the actual April 2016 rating reduction made by the RO for asthma or the termination of special monthly compensation. This is necessary for him to commence an appeal concerning those decisions, and he still has time to do this if he would like to do so. 

FINDINGS OF FACT

1. Prior to February 3, 2014, the Veteran did not have moderate limitation of motion of his lumbar spine; nor did he have forward flexion of his thoracolumbar spine not greater than 60 degrees; or the combined range of motion of his thoracolumbar spine not greater than 120 degrees; or muscle spasm or guarding severe enough to result in abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 

2. From February 3, 2014, forward flexion of the thoracolumbar spine was limited to 30 degrees; unfavorable ankylosis of the entire thoracolumbar spine was not shown. 

3. Prior to February 3, 2014, the Veteran did not have lumbosacral strain with muscle spasm on extreme forward bending, and unilateral loss of lateral spine motion in a standing position. 

4. From February 3, 2014, the Veteran does not have severe lumbosacral strain, with listing of the whole spine to the opposite side, positive Goldthwaite's sign, marked limitation of forward bending in a standing position, loss of lateral motion with osteoarthritic changes, or narrowing or irregularity of joint space, or some of the above with abnormal mobility on forced motion. 

5. Prior to February 3, 2014, the Veteran did not have moderate lumbar spine intervertebral disc syndrome, with recurring attacks. 

6. From February 3, 2014, the Veteran does not have severe lumbar spine intervertebral disc syndrome, with recurring attacks, with intermittent relief. 

7. Prior to February 3, 2014, the Veteran did not have incapacitating episodes of lumbar spine intervertebral disc syndrome having a total duration of 2 weeks or more during the past 12 months; and from February 3, 2014, he has not had them for a total duration of 4 weeks or more during the past 12 months. 

8. Since August 2, 2003, the Veteran has had mild, but not moderate, right lower extremity radiculopathy. 

9. Prior to June 19, 2009, the Veteran does not have mild left lower extremity radiculopathy. 

10. Since June 19, 2009, the Veteran has had mild, but not moderate, left lower extremity radiculopathy. 

11. The Veteran does not have any other neurological abnormalities which are associated with his service connected lumbar spine intervertebral disc syndrome.

12. The Veteran's service-connected lumbar spine intervertebral disc syndrome with right and left lower extremity radiculopathy do not preclude him from engaging in all forms of substantially gainful employment. 


CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 10 percent for lumbar spine intervertebral disc syndrome prior to February 3, 2014 have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.40, 4.45, 4.71a, Diagnostic Codes 5292-5295 (2002), 5243 (2003, 2015).

2. The criteria for a 40 percent rating, but not higher, for lumbar spine intervertebral disc syndrome from February 3, 2014 have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.40, 4.45, 4.71a, Diagnostic Codes 5292-5295 (2002), 5243 (2003, 2015).

3. The criteria for a 10 percent rating, but not higher, for right lower extremity radiculopathy from August 2, 2003 to present are met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.124a, Diagnostic Code 8720 (2015).

4. The criteria for a compensable rating for left lower extremity radiculopathy prior to June 19, 2009 are not met. The criteria for a 10 percent rating, but not higher, for left lower extremity radiculopathy from June 19, 2009 to present are met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.124a, Diagnostic Code 8720 (2015).

5. The criteria for TDIU due to service-connected lumbar spine intervertebral disc syndrome with right and left lower extremity radiculopathy are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.16, 4.19 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Disability ratings are based upon VA's Schedule for Rating Disabilities as set forth in 38 C.F.R. Part 4. The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity in civil occupations. 38 U.S.C.A. § 1155. The disability must be viewed in relation to its history. 38 C.F.R. § 4.1. A higher evaluation shall be assigned where the disability picture more nearly approximates the criteria for the next higher evaluation. 38 C.F.R. § 4.7.

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary importance. Francisco v. Brown, 7 Vet. App. 55 (1994). Nevertheless, where the evidence contains factual findings that show a change in the severity of symptoms during the course of the rating period on appeal, assignment of staged ratings would be permissible. Hart v. Mansfield, 21 Vet. App. 505 (2007). 

The effective date for the grant of service connection for the disability for which the ratings are now at issue is August 2, 2003, the date following the Veteran's August 2003 service discharge. The appeal stems from the original rating assigned in the August 2004 rating decision.

Currently, a 10 percent rating is in effect for lumbar spine intervertebral disc syndrome from August 2, 2003 to February 3, 2014, and a 20 percent rating is in effect from the latter date. Two 10 percent ratings are in effect for right and left lower extremity radiculopathy, both from February 3, 2014, the date of a VA-authorized examination report. 

The regulations for rating disabilities of the spine were revised during the pendency of the claim, effective September 26, 2003. See 68 Fed. Reg. 51454 (Aug. 27, 2003). When a law or regulation changes after a claim has been filed or reopened, but before the administrative or judicial appeals process has been concluded, the version of the law or regulation most favorable to the appellant generally applies. Only the former criteria can be applied for the period prior to the effective date of the new criteria. However, both the old and new criteria can be applied as of that date. See VAOPGCPREC 7-2003 (Nov. 19, 2003); see also 38 U.S.C.A. § 5110 (g); 38 C.F.R. § 3.114 . 

Former Diagnostic Code 5292 permits a 10 percent rating for slight limitation of motion of the lumbar spine, a 20 percent rating for moderate limitation of motion of the lumbar spine, and a 40 percent rating for severe limitation of motion of the lumbar spine. 

Additionally, there is former Diagnostic Code 5295. Under it, lumbosacral strain with characteristic pain on motion warrants a 10 percent rating. With muscle spasm on extreme forward bending, and unilateral loss of lateral spine motion in a standing position, a 20 percent rating is warranted. Severe lumbosacral strain, with listing of the whole spine to the opposite side, positive Goldthwaite's sign, marked limitation of forward bending in a standing position, loss of lateral motion with osteoarthritic changes, or narrowing or irregularity of joint space, or some of the above with abnormal mobility on forced motion, warrants a 40 percent rating. 

Additionally, former Diagnostic Code 5293 provides ratings for intervertebral disc syndrome between 0 and 60 percent based on orthopedic and neurological manifestations. A noncompensable rating is assigned for postoperative, cured intervertebral disc syndrome. A 10 percent rating is assigned for mild intervertebral disc syndrome. A 20 percent rating is assigned for moderate intervertebral disc syndrome, with recurring attacks. A 40 percent rating is assigned for severe intervertebral disc syndrome, with recurring attacks, with intermittent relief. A 60 percent rating is assigned for pronounced intervertebral disc syndrome, with persistent symptoms compatible with sciatic neuropathy with characteristic pain and demonstrable muscle spasm, absent ankle jerk, or other neurologic findings appropriate to the site of diseased disc, with little intermittent relief. 

Under 38 C.F.R. § 4.71a's (2015) new General Rating Formula for Diseases and Injuries of the Spine, forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or vertebral body fracture with loss of 50 percent or more of the height warrants a 10 percent rating. Forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis warrants a 20 percent rating. Forward flexion of the thoracolumbar spine to 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine warrants a 40 percent rating. 

Effective from September 23, 2002, see 67 Fed. Reg. 54345 (August 22, 2002), intervertebral disc syndrome could be rated either on chronic orthopedic and neurological manifestations or on the frequency of incapacitating episodes, defined as requiring bed rest prescribed by a physician and treatment by a physician. Effective from September 26, 2003, 68 Fed. Reg. 51456 (Aug. 27, 2003), the current General Rating Formula for Diseases and Injuries of the Spine became effective. 

Thus, prior to September 23, 2002, intervertebral disc syndrome can be rated on the basis of orthopedic and neurological manifestations under Diagnostic Code 5293. From September 23, 2002, intervertebral disc syndrome is rated either on the basis of chronic orthopedic and neurological manifestations or on the basis of frequency of incapacitating episodes. A 10 percent rating under the new Formula For Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes requires incapacitating episodes having a total duration of at least 1 week but less than 2 weeks during the past 12 months. A 20 percent rating requires incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months. A 40 percent rating required incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months. An incapacitating episode is defined as a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. See that Formula and its Note (1) at 38 C.F.R. § 4.71a. 

The rating criteria for the Veteran's right and left lower extremity neurological manifestations, found at 38 C.F.R. § 4.124a, have not changed. The RO has rated the Veteran's left and right lower extremity radiculopathy under 38 C.F.R. § 4.124a, Diagnostic Code 8720, which is a sciatic nerve rating for neuralgia.

Under Diagnostic Code 8520, which is for paralysis of the sciatic nerve, and under which sciatic neuralgia is rated, a 10 percent rating is warranted for mild incomplete paralysis of the sciatic nerve. A 20 percent rating is warranted when the incomplete paralysis is moderate, and a 40 percent rating is warranted when the incomplete paralysis is moderately severe. A 60 percent rating is warranted when there is severe incomplete paralysis of the sciatic nerve, with marked muscular atrophy. An 80 percent rating is warranted when there is complete paralysis of the sciatic nerve; the foot dangles and drops, no active movement possible of muscles below the knee, flexion of the knee is weakened or (very rarely) lost. 

Where functional loss is alleged due to pain upon motion, the provisions of 38 C.F.R. §§ 4.40 and 4.45 must be considered. DeLuca v. Brown, 8 Vet. App. 202, 207-08 (1995). 

Under 38 C.F.R. § 4.40, functional loss may be due to pain, supported by adequate pathology and evidenced by visible behavior on motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. Under 38 U.S.C.A. § 4.45, factors of joint disability include increased or limited motion, weakness, fatigability, or painful movement, swelling, deformity or disuse atrophy. 

On VA authorized examination in February 2004, it was noted that the Veteran had a history of recurring low back pain with radiation into the right leg and hip now and then, with a feeling of numbness in that region. A further extension into the right foot was not present. Micturition and bowel movements were normal. There was no radiation into the left foot. Urination and stools were normal. The Veteran was able to sit, walk, or stand only for limited periods of time. On examination, his gait appeared normal. Typical types of gaits were demonstrated without difficulty. The Veteran could squat easily and get up easily with no signs of insufficiency. His shoulders were positioned longitudinally with the head positioned in the center. His pelvis-sacrum was positioned straight and the vertebral column was vertical, with hyperlordosis. Physical examination revealed lumbar spine sideways inclination to the right to 35 degrees passively, and 32 degrees actively, with complaints of pain at 30 degrees. Sideways inclination to the left was to 35 degrees passively and actively, with complaints of pain at 35 degrees. Right and left rotation were each to 35 degrees, with no complaints of pain. Forward flexion was to 110 degrees passively and actively, with no pain reported, and extension backward was to 35 degrees, with no pain reported. An MRI of the lumbar spine revealed foraminal stenosis at L5/S1. Muscular proprioceptive reflexes were normal and equal on both sides, and deep sensitivity was observed. Coordination was normal, and there were no pathological reflexes. The Veteran had pressure sensitivity of the plantar aponeurosis, and there were no sensorimotor deficits. The diagnosis was myotendinous and static syndrome of the lumbar vertebral column, in addition to foraminal stenosis at L5/S1 on both sides with recurring radiculopathy at L5/S1 on the right as shown by MRI. 

On VA evaluation on June 19, 2009, the Veteran reported bilateral radicular symptoms into his lateral legs, right greater than left. He was neurologically negative. In July 2011, the Veteran reported that he had had an MRI of his back 2 years beforehand, showing some disc space narrowing but no sign of nerve root compression. Since late May, he had been having a lot more pain in his right leg. He reported a lot of pain when he sat for more than 10 minutes, to the point where he would have to stand up and move around. He was not clearly having any weakness or numbness in his lower extremities, and no urinary symptoms. He felt he could not work any longer at jobs he had previously been doing. No neurological findings were made. The impression was chronic back pain with an injury in late May. The physician suspected that he possibly had nerve root compression at times. An August 2011 addendum shows that an MRI showed no evidence of nerve root compression. 

On VA evaluation in September 2011, the Veteran reported that he had been having pain in his back since 1994. It was a constant gripping pain in his right low back and then he would get a hot kind of feeling down the top of his right thigh and hip. He stated that it is worse when he has to walk any distance or if he has to sit for a prolonged period of time. On evaluation, he walked independently. His bilateral lower extremity strength was within normal limits. He had difficulty moving from sitting to supine due to pain. He was able to demonstrate trunk active range of motions within functional limits. A wall test showed that his right sacroiliac joint was locked, but there was no evidence of edema, redness, warmth, or increased pain. This responded well to physical therapy. 

On VA authorized examination on February 3, 2014, the Veteran reported flare-ups 3 to 4 times per week, lasting up to one day. On range of motion testing, the Veteran had forward flexion to 35 degrees, with painful motion beginning at 30 degrees. Extension was to 5 degrees, with painful motion at that point. Right lateral flexion was to 25 degrees, with painful motion at 20 degrees. Left lateral flexion was to 10 degrees, with painful motion beginning at 5 degrees. Right and left lateral rotation were to 30 degrees, with painful motion at that point. On repetitive use testing with 3 repetitions, forward flexion was to 35 degrees, extension was to 5 degrees, right lateral flexion was to 25 degrees, left lateral flexion was to 5 degrees, and right and left lateral rotation were to 30 degrees. The Veteran had muscle spasm that resulted in abnormal spinal contour. Muscle strength testing was all normal in his lower extremities. Deep tendon reflexes were 2+ at the knees and ankles, and sensory examination was normal in the lower extremities. The examiner indicated that the Veteran did not have constant pain in his right or left lower extremity. He had moderate intermittent pain in each lower extremity. He had no right or left lower extremity paresthesias or numbness. Tests revealed involvement of the sciatic nerve bilaterally. The Veteran had no other neurological abnormalities related to his thoracolumbar spine condition, such as bowel or bladder problems or pathological reflexes. The Veteran had intervertebral disc syndrome, with a total duration of incapacitating episodes of at least 1 week but less than 2 weeks over the past 12 months. It was felt that the condition limited him to lifting 5 kg occasionally. His walking was unlimited. Sitting and standing was unlimited, as long as the Veteran changed position occasionally. He was to have no forced position; no cold, wet, or windy working areas; no lifting, pulling, pushing, or carrying more than 5 kg occasionally; and no bending, twisting, jumping, or climbing. 

A July 2016 VA authorized examination for the Veteran's knees shows no reduction in lower extremity muscle strength, and no muscle atrophy. 

The evidence shows that from August 2003 to February 3, 2014, no more than a 10 percent rating is warranted based on low back limitation of motion under the old or new rating criteria. The February 2004 VA examination showed flexion to 110 degrees, and other motions to at least 30 degrees. This does not permit a rating greater than 10 percent under old rating criteria or the new rating criteria. This would warrant no more than a 10 percent rating under old Diagnostic Code 5292, for as it was no more than slight limitation of lumbar spine motion, and no more than a 10 percent rating under the new rating criteria's General Rating Formula for Diseases and Injuries of the Spine, as forward flexion of the thoracolumbar spine was to greater than 60 degrees and the combined range of motion of the thoracolumbar spine was to greater than 120 degrees and there was not muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour. 

The Board next finds that from February 3, 2014, a 40 percent rating is warranted based on low back limitation of motion under the new rating criteria. The February 3, 2014 examination report shows that the Veteran's thoracolumbar spine forward flexion was to 35 degrees, with pain at 30 degrees. The examiner noted the Veteran's report of flare-ups 3 to 4 times per month, lasting up to one day, resulting in limitation to standing and walking. Although forward flexion was to 35 degrees during repetitive use testing, the examiner noted that the Veteran had functional impairment based on less movement than normal, pain on movement, and interference with sitting, standing and/or weight-bearing. This evidence clearly reflects that the Veteran's back disability has caused impairment to the normal working movements of the body such as excursion, strength, speed, coordination, and endurance. Mitchell v. Shinseki, 25 Vet. App. 32 (2011). Therefore, he is entitled to an increased 40 percent rating from February 3, 2014 based on functional impairment caused by pain. As there is no evidence of unfavorable ankylosis of the entire thoracolumbar spine, an increased 50 percent rating is not warranted under the more recent criteria. 

The evidence also shows that from August 2003 to February 3, 2014, a rating in excess of 10 percent could not be assigned for lumbar spine intervertebral disc syndrome under old Diagnostic Code 5295, as the evidence shows that the Veteran did not have lumbosacral strain with muscle spasm on extreme forward bending and unilateral loss of lateral spine motion in a standing position. The evidence further shows that from February 3, 2014, a rating in excess of 20 percent cannot be assigned under Diagnostic Code 5295, as the Veteran does not have severe lumbosacral strain with listing of the whole spine to the opposite side, positive Goldthwaite's sign, marked limitation of forwarded bending in a standing position, loss of lateral motion with osteoarthritic changes, or narrowing or irregularity of joint space, or some of the above with abnormal mobility on forced motion. The Veteran's forward flexion was not markedly limited on VA examination in February 2014, lumbosacral strain was not diagnosed, his whole spine was not listed to the opposite side, and there was not loss of lateral spine motion or abnormal mobility on forced motion. 

Furthermore, the evidence does not support the assignment of a 20 percent rating for the Veteran's low back disability prior to February 3, 2014, by rating it as intervertebral disc syndrome under old Diagnostic Code 5293. Under that Diagnostic Code, a 20 percent rating could be assigned for moderate intervertebral disc syndrome, with recurring attacks. The Veteran's intervertebral disc syndrome would best be categorized as no more than mild prior to February 3, 2014, rather than moderate with recurring attacks. The only complaint on examination in February 2004 was of radiation now and then into only the right leg and hip, with a feeling of numbness. At the time of the June 2009 VA evaluation, the Veteran was having only right leg pain, and no weakness or numbness in his lower extremities, and the examiner suspected only that he had nerve root compression at times and an MRI showed no evidence of nerve root compression. In September 2011, the Veteran mentioned positive complaints only in his right lower extremity, and his bilateral lower extremity strength was within normal limits. This shows that the Veteran did not have moderate intervertebral disc syndrome with recurring attacks. 

The evidence also shows that from February 3, 2014, a rating in excess of 20 percent cannot be assigned under old Diagnostic Code 5293, as the evidence shows that severe intervertebral disc syndrome with recurrent attacks with intermittent relief is not present. The February 2014 examination indicates that the Veteran had less than 2 weeks of incapacitating episodes over the past 12 month period, his muscle strength was normal, and his deep tendon reflexes and sensory were also, and the Veteran did not have constant pain in his right or left lower extremity; instead, he had moderate intermittent pain. There was no paresthesias or numbness. 

Additionally, there is no indication that the Veteran had incapacitating episodes of intervertebral disc syndrome having a total duration of at least 2 weeks during the past 12 months prior to February 3, 2014, to permit a rating higher than 10 percent under the new Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes now listed in 38 C.F.R. § 4.71a. To the contrary, the report from that date indicates that he had had incapacitating episodes of less than 2 weeks over the past 12 months at that time. 

There is also no indication that the Veteran has incapacitating episodes of intervertebral disc syndrome having a total duration of at least 4 weeks during the past 12 months from February 3, 2014, to permit a rating higher than 20 percent under the new Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes. There is no report of at least 4 weeks of incapacitating episodes during the past 12 months since February 3, 2014, and the examiner on that date indicated that the Veteran has not had more than 2 episodes of intervertebral disc syndrome in the past 12 months. 

The Board also finds that from August 2003 to February 3, 2014, a 10 percent rating for right lower extremity radiculopathy is reasonable. The Veteran had complaints of radiation now and then into his right leg and hip, and numbness in that region, at the time of the February 2004 examination. A rating higher than that is not warranted, however, either prior to or after February 3, 2014. No muscle weakness was shown on examination in February 2004, at the time of the evaluation in June 2009, or at the time of evaluation in September 2011. The evaluator in June 2009 suspected that the Veteran had possible nerve root compression only at times. On authorized examination in February 2014, the Veteran reported only moderate intermittent pain in his right lower extremity, and he had no right lower extremity paresthesias or numbness. Also, there was no weakness or atrophy on authorized examination in July 2016. 

The Board next finds that prior to June 19, 2009, a compensable rating is not warranted for left lower extremity radiculopathy, as mild incomplete paralysis of the sciatic nerve was not present. The evidence including the February 2004 VA examination report shows no left lower extremity radicular symptoms prior to that time. The Veteran's left lower extremity was neurologically normal in February 2004. He reported only right lower extremity symptoms in February 2004, and there was no mention of any left lower extremity symptoms prior to June 19, 2009. 

The Board finds that from June 19, 2009 to present, however, a 10 percent rating, but not higher, is warranted for left lower extremity radiculopathy. On June 19, 2009, the Veteran indicated that he had radicular symptoms into his left lower extremity, and this and the other evidence since then is reasonably consistent with mild incomplete paralysis of the left lower extremity. No more than a 10 percent rating is warranted from June 19, 2009, however, as moderate sciatic nerve incomplete paralysis in the left lower extremity is not shown from June 19, 2009 to present. The physician noted in June 2009 that the Veteran had no clear weakness or numbness in his lower extremities, and suspected that he only possibly had nerve root compression at times. His left lower extremity strength was normal on evaluation in September 2011. His deep tendon reflexes and sensory were normal on examination on February 3, 2014, with no paresthesias or numbness, and in July 2016, he had no reduction in muscle strength, and no muscle atrophy. 

In light of all of the above, a rating in excess of 10 percent for low back limitation of motion or intervertebral disc syndrome based on incapacitating episodes is not warranted prior to February 3, 2014, and a rating in excess of 20 percent for low back limitation of motion or intervertebral disc syndrome based on incapacitating episodes is not warranted from February 3, 2014. A 10 percent rating is assignable for right lower extremity radiculopathy from the August 2003 effective date of the grant of service connection, to the present. A 10 percent rating is assignable for left lower extremity radiculopathy from, but not prior to June 19, 2009. 

The provisions of 38 C.F.R. §§ 4.40, 4.45 have been considered in every applicable respect, with notations, where appropriate, as to the absence, presence, and severity of symptoms which they indicate should be considered in determining disability ratings, and that the benefit of the doubt doctrine has been carefully considered as well, but no higher ratings than those indicated above are warranted. 

No other compensable ratings are warranted for objective neurological abnormalities associated with the Veteran's service-connected low back disability, as none are claimed or shown. The examiner in February 2004 indicated that the Veteran's micturition and bowel movements were normal, and the physician in June 2009 indicated that he had no urinary symptoms The examiner in February 2014 indicated that the Veteran had no other neurological abnormalities related to his thoracolumbar spine condition, such as bowel or bladder problems or pathological reflexes.

Other considerations

The Board has considered lay statements from the Veteran about the severity of his low back and bilateral lower extremity radiculopathy disabilities. The Veteran's complaints have been considered and accepted, along with the probative competent evidence concerning the nature and extent of his disabilities which has been provided by the medical personnel who have examined him during the course of the current claim and who have considered and described pertinent clinical findings and rendered pertinent opinions in conjunction with their evaluations. The evidence of record directly addresses the criteria under which the disabilities are evaluated. 

The discussion above reflects that the rating criteria reasonably describe and contemplate the severity and symptomatology of the Veteran's service-connected low back disability with left and right lower extremity radiculopathy. The symptoms and impairment caused by them are specifically contemplated by the schedular rating criteria including 38 C.F.R. § 4.40, 4.45. These include impairment caused by pain, limitation of motion, weakness, muscle spasm, lack of endurance, diminished neurology, and the like. Thus, consideration of whether the Veteran's disability pictures exhibit other related factors such as those provided by the regulations as "governing norms" is not required and referral for extraschedular rating is unnecessary. Thun v. Peake, 22 Vet. App. 111 (2008). 

Finally, the Board notes that the Veteran is service-connected for several disabilities. However, the issue of whether referral for extraschedular consideration is warranted for the Veteran's disabilities on a collective basis has not been argued or reasonably raised by the record. Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014); Yancy v. McDonald, 27 Vet. App. 484 (2016). 

TDIU

The Board finds that the matter of TDIU due to the Veteran's service-connected lumbar spine intervertebral disc syndrome with right and left lower extremity radiculopathy has been raised by the record, per Rice v. Shinseki, 22 Vet. App.447 (2009), and that the issue is ready for appellate review. 

VA will grant a total rating for compensation purposes based on unemployability when the evidence shows that a Veteran is precluded from obtaining or maintaining any gainful employment consistent with his education and occupational experience, by reason of service-connected disabilities. 38 C.F.R. §§ 3.340 , 3.341, 4.16. 

If there is only one such disability, it must be rated at 60 percent or more, and if there are two or more disabilities, there shall be at least one disability rated at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent. 38 C.F.R. § 4.16 (a). For those Veterans who fail to meet the percentage standards set forth in 38 C.F.R. § 4.16 (a), total disability ratings for compensation may nevertheless be assigned when it is found that the service-connected disability(ies) is(are) sufficient to produce unemployability; such cases should be referred to the Director, Compensation and Pension Service, for extraschedular consideration. 38 C.F.R. § 4.16 (b). 

For a Veteran to prevail on a total rating claim, the record must reflect some factor which takes the claimant's case outside the norm. See Van Hoose v. Brown, 4 Vet. App. 361, 363 (1996); 38 C.F.R. §§ 4.1, 4.15. The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. The question is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether he can find employment. See 38 U.S.C.A. § 4 .16 (a); Van Hoose, 4 Vet. App. at 363.

In this case, the disabilities at issue are lumbar spine intervertebral disc syndrome, which is ratable at no more than 20 percent, and right and left lower extremity radiculopathy, each ratable at no more than 10 percent, for an aggregate rating of 40 percent. Accordingly, the schedular criteria for TDIU under 38 C.F.R. § 4.16 (a) are not met.

The analysis progresses to consideration of 38 C.F.R. § 4.16 (b), and a determination as to whether referral for extraschedular consideration is warranted, i.e., the Board must determine whether the Veteran is unemployable due to these service-connected disabilities regardless of the 40 percent rating. 38 C.F.R. § 4.16 (b) provides that it is established by VA policy that "all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated as totally disabled." However, in these cases, in order for the Veteran to prevail on a claim based on unemployability, it is necessary that the record reflect some circumstance which places the claimant in a different position from other Veterans with the same rating.

The disability picture presented by the Veteran's lumbar spine intervertebral disc syndrome with right and left lower extremity radiculopathy does not reflect that the impact of it is such that it places him outside of the norm and renders him unemployable. 

In June 2009, the Veteran reported that he felt he could not work any longer at jobs he had previously been doing. In December 2013, the Veteran reported that he cannot sit for long periods of time, because this causes him very much pain; and that lifting, bending over, and standing for long periods of time is also a problem. He stated that the only relief he could get from the pain is from pain medication and walking. He also stated that problems with his back were making his job opportunities slim to none. He implied that he was still working, as a busboy, as he stated: "I work at the local Chile's." He indicated that he had to resign from his last job due to pain and to come to United States to get medical help. A July 2016 VA examiner stated that the Veteran reported losing his job in June 2016 predominantly due to his back. In the examiner's opinion, the Veteran was unable to perform any gainful employment because of multiple health impacting disabilities. He felt that the Veteran's prospects for finding a new job were poor due to his service-connected disabilities.
 
Educational and employment information which the Veteran has submitted shows that he is currently working on a Criminal Justice degree and that he has experience in IT work, tax work, as a coordinator of automation equipment, and in voice and data communication, video teleconferencing, and with LANs; and that he has been responsible for operation of complex cryptographic equipment and has had significant training. 

Based on the evidence, the Board finds that referral of the Veteran's claim for TDIU due to lumbar spine intervertebral disc syndrome and right and left lower extremity radiculopathy for extraschedular consideration of a TDIU rating is not warranted, as the preponderance of the evidence indicates that they do not preclude him from all forms of substantially gainful employment. Given the Veteran's education and prior work experience, it is clear that these disabilities do not preclude him from all forms of substantially gainful employment. There would appear to be numerous more sedentary occupations which he could perform, which would provide him with an opportunity to get up after sitting for shorter periods of time, and which would not be contraindicated by the limitations reported by the examiner in February 2014, which are mentioned well above. 

With respect to the Veteran's claims being decided herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326; see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). The representative argued in August 2016 that a remand is warranted for a new VA examination, as the examiner in 2014 did not have the claims folder available to him and so he could not answer the questions posed by the Board in June 2011. However, a review of the record reveals that the information provided by the examiner and the rest of the record permits a fair, full, and informed review of the Veteran's appeal. Accordingly, a remand would serve no useful purpose. Soyini v. Derwinski, 1 Vet. App. 541 (1991). 

The Board is grateful to the Veteran for his honorable service, and regrets that a more favorable outcome could not be reached.


ORDER

A rating in excess of 10 percent for lumbar spine intervertebral disc syndrome prior to February 3, 2014 is denied.

A 40 percent rating for lumbar spine intervertebral disc syndrome from February 3, 2014, is granted, subject to the controlling regulations applicable to the payment of monetary benefits.

The current 10 percent rating, but not higher, for right lower extremity radiculopathy, is granted from August 2, 2003, subject to the controlling regulations applicable to the payment of monetary benefits.

A compensable rating for left lower extremity radiculopathy is denied prior to June 19, 2009; however, the current 10 percent rating for it, but not higher, is granted from June 19, 2009, subject to the controlling regulations applicable to the payment of monetary benefits.

A TDIU due to lumbar spine intervertebral disc syndrome with right and left lower extremity radiculopathy is denied. 




______________________________________________
M. E. LARKIN
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs